STATE OF NEBRASKA, EX REL. DAVID C. PATTERSON, V. BOARD OF COUNTY COMMISSIONERS OF DOUGLAS COUNTY ET AL.

FILED MARCH 5, 1896.   No. 7814.

1. **County Canals:** CONSTITUTIONALITY OF STATUTE: AMENDMENTS: CORPORATIONS. By an act of the legislature there was provided to be appointed a board of trustees, which, when organized, should in law and equity be construed as a body corporate and politic, and which might in its corporate name sue and be sued, contract and be contracted with, acquire and hold real and per-

sonal property necessary for its corporate purposes, adopt and change its corporate seal, construct and operate a canal for the purposes of commerce and supplying power, heat, and light. *Held*, That this was not a municipal corporation, and that the attempt to make it a corporation was nugatory, because in effect the general corporation law in existence was thereby sought to be amended without its provisions being referred to in any way in the amendatory act.

2. **Statutes:** TITLES OF BILLS: CONSTITUTIONAL LAW: CORPORATIONS: CANALS. In the title of an act its scope was defined as authorizing counties of a prescribed description, among other powers conferred, to construct, own, and operate canals in certain defined ways, also to acquire right of way and land for such purposes, and also to provide for the appointment of a board of trustees to carry such purposes into effect. In the act itself provision was made for the appointment of a board of trustees, which, when organized, should in law and equity be construed a body corporate and politic, and in this board the act provided there should be vested the power to construct and operate such canal, and that, for those purposes, such board of trustees might in its own name acquire right of way and other required land even by condemnation proceedings if necessary. *Held*, That the subject of the act was not clearly expressed in its title, as required in section 11, article 3, of the constitution of Nebraska, and that, since this defect rendered inoperative its other provisions, the entire act is null and void.

ERROR from the district court of Douglas county. Tried below before AMBROSE, DUFFIE, and KEYSOR, JJ.

The opinion contains a statement of the case.

*B. S. Baker, C. J. Greene, J. L. Kennedy, Charles Ogden*, and *George W. Covell*, for plaintiff in error:

The act in question does not violate the following provisions of section 11, article 3, of the constitution: "No bill shall contain more than one subject, and the same shall be clearly expressed in its

title. And no law shall be amended unless the new act contains the section or sections so amended, and the section or sections so amended shall be repealed." (*People v. Nelson*, 133 Ill., 574; *People v. Mahaney*, 13 Mich., 481; *Wellington, Petitioner*, 16 Pick. [Mass.], 87; *Erie & N. E. R. Co. v. Casey*, 26 Pa. St., 287; *Powell v. Commonwealth*, 114 Pa. St., 265; *Hawthorne v. People*, 109 Ill., 302; *People v. Hazelwood*, 116 Ill., 319; *Wulff v. Aldrich*, 124 Ill., 591; *Field v. People*, 2 Scam. [Ill.], 79; *Lane v. Dorman*, 3 Scam. [Ill.], 238; *People v. Marshall*, 1 Gil. [Ill.], 672; *Newland v. Marsh*, 19 Ill., 376; *Bigelow v. West Wisconsin R. Co.*, 27 Wis., 478; *Attorney General v. City of Eau Claire*, 37 Wis., 400; *Dow v. Norris*, 4 N. H., 16; *People v. Supervisors of Orange County*, 17 N. Y., 235; *Bitters v. Commissioners of Fulton County*, 81 Ind., 125; *Clare v. People*, 9 Colo., 122; *White v. City of Lincoln*, 5 Neb., 505; *Hamlin v. Meadville*, 6 Neb., 234; *Kansas City & O. R. Co. v. Frey*, 30 Neb., 790; *Dogge v. State*, 17 Neb., 143; *State v. Babcock*, 23 Neb., 128.)

The power conferred upon the judges of the district court by the act in question, to appoint canal trustees, is one which the judges may exercise under the provisions of the constitution, and the act is not unconstitutional in conferring such power upon them. (*People v. Nelson*, 133 Ill., 600; *People v. Williams*, 51 Ill., 63; *People v. Morgan*, 90 Ill., 558; *Moore v. People*, 109 Ill., 499; *Kilgour v. Drainage Commissioners*, 111 Ill., 342; *Huston v. Clark*, 112 Ill., 344; *Owners of Lands v. People*, 113 Ill., 296; *People v. Hoffman*, 116 Ill., 587; *Field v. People*, 2 Scam. [Ill.], 79; *McArthur v. Nelson*, 81 Ky., 67; *David v. Portland Water Committee*, 14 Ore., 98; *Sheboygan v. Parker*, 3 Wall. [U. S.], 93; *Mississippi v. Johnson*, 4 Wall. [U. S.], 475; *Flour-*

*noy v. City of Jefferson*, 17 Ind., 169; *Tennessee & C. R. Co. v. Moore*, 36 Ala., 371; *Commissioner of the General Land Office v. Smith*, 5 Tex., 471; *Life & Fire Ins. Co. of New York v. Wilson*, 8 Pet. [U. S.], 291; *Morton v. Comptroller General*, 4 Rich. [S. Car.], 430; *Grider v. Tally*, 77 Ala., 422; *Rains v. Simpson*, 50 Tex., 495; *Kendall v. Stokes*, 3 How. [U. S.], 87; *South v. Maryland*, 18 How. [U. S.], 396; *Ex parte Virginia*, 100 U. S., 339; *Conner v. Long*, 104 U. S., 228; *People v. Supervisors*, 35 Barb. [N. Y.], 408; *Pennington v. Streight*, 54 Ind., 376; *Ex parte Batesville*, 39 Ark., 82; *Evans v. Etheridge*, 96 N. Car:, 42; *Crane v. Camp*, 12 Conn., 464; *State v. Doyle*, 40 Wis., 174; *Washington County v. Boyd*, 64 Mo., 179; *Platter v. County Commissioners*, 103 Ind., 360; *People v. Bush*, 40 Cal., 344; *Tillotson v. Cheetham*, 2 Johns. [N. Y.], 63; *Jackson v. Buchanan*, 89 N. Car., 74; *Baldwin v. Hewitt*, 88 Ky., 673; *State v. Sneed*, 84 N. Car., 816; *Nash v. People*, 36 N. Y., 607; *Mathews v. Houghton*, 11 Me., 377; *Wilson v. Mayor of New York*, 1 Den. [N. Y.], 595; *Marion County v. Moffett*, 15 Mo., 406; *Ray County v. Bentley*, 19 Mo., 236; *Cedar County v. Johnson*, 50 Mo., 227; *Town Board v. Boyd*, 58 Mo., 279.)

The act does not violate section 15, article 3, of the constitution, prohibiting special legislation. (*State v. Robinson*, 35 Neb., 401; *State v. Spaude*, 37 Minn., 322; *Hingle v. State*, 24 Ind., 28; *Hymes v. Aydelott*, 26 Ind., 421; *Toledo, L. & B. R. Co. v. Nordyke*, 27 Ind., 95; *Conner v. City of New York*, 2 Sand. [N. Y.], 355; *Wheeler v. City of Philadelphia*, 77 Pa. St., 338; *Kilgore v. Magee*, 85 Pa. St., 401; *Commonwealth v. Patton*, 88 Pa. St., 258; *McAunich v. Mississippi & M. R. Co.*, 20 Ia., 338; *Haskel v. City of Burlington*, 30 Ia., 232; *State v. Tolle,* 71

Mo., 645; *Marmett v. City of Cincinnati*, 45 O. St., 63; *Hunzinger v. State*, 39 Neb., 653; *McClay v. City of Lincoln*, 32 Neb., 412.)

The act is not void on the ground that it provides for taking private property under the guise of taxes for other than a public purpose. (*People v. Mayor of Brooklyn*, 4 N. Y., 419; *Williams v. Mayor of Detroit*, 2 Mich., 560; *Scovill v. City of Cleveland*, 1 O. St., 126; *Northern Ind. R. Co. v. Connelly*, 10 O. St., 159; *Washington Avenue*, 69 Pa. St., 352; *White v. People*, 94 Ill., 604; *Varick v. Smith*, 5 Paige Ch. [N. Y.], 160; *Napa Valley R. Co. v. Napa County*, 30 Cal., 487; *Stockton & V. R. Co. v. City of Stockton*, 41 Cal., 147; *Parham v. Justices*, 9 Ga., 341; *Water-Works Co. v. Burkhart*, 41 Ind., 364; *Challis v. Atchison, T. & S. F. R. Co.*, 16 Kan., 117; *New Central Coal Co. v. George's Creek Coal Co.*, 37 Md., 537; *Haverhill Bridge Proprietors v. County Commissioners*, 103 Mass., 120; *Dietrich v. Murdock*, 42 Mo., 379; *County Court v. Griswold*, 58 Mo., 175; *Concord R. Co. v. Greely*, 17 N. H., 47; *Brooklyn Park Commissioners v. Armstrong*, 45 N. Y., 234; *In re Townsend*, 39 N. Y., 171; *Rogers v. Bradshaw*, 20 Johns. [N. Y.], 735; *Willyard v. Hamilton*, 7 O. [Part 2], 111; *Chesapeake & Ohio Canal Co. v. Key*, 3 Cranch [U. S. C. C.], 599; *Darlington v. City of New York*, 31 N. Y., 164; *Bell v. Mayor of New York*, 105 N. Y., 142; *Spalding v. Andover*, 54 N. H., 55; *Skinkle v. Essex Road Board*, 47 N. J. Law, 93; *Hubbell v. City of Viroqua*, 67 Wis., 348; *City of San Francisco v. Canavan*, 42 Cal., 542; *Payne v. Treadwell*, 16 Cal., 233; *Hart v. Burnett*, 15 Cal., 568; *People v. Mayor of Chicago*, 51 Ill., 31; *Richland County v. Lawrence County*, 12 Ill., 8; *Trustees of Schools v. Tatman*, 13 Ill., 30; *Palmer v. Fitts*, 51 Ala., 492.)

References as to taking of private property for public use and delegation of powers to private individuals or corporations: *President & Commissioners v. State*, 45 Ala., 399; *Weymouth & Braintree Fire District v. County Commissioners*, 108 Mass., 144; *Montpelier v. East Montpelier*, 29 Vt., 12.

Canal trustees are not county officers within the meaning of the provision of the constitution providing for the election of county and township officers. (*United States v. Hatch*, 1 Pinney [Wis.], 182; *Horton v. Town of Thompson*, 71 N. Y., 521; *Liebman v. City of San Francisco*, 24 Fed. Rep., 719; *Hoagland v. City of Sacramento*, 52 Cal., 149; *Tone v. Mayor of New York*, 70 N. Y., 165; *Shepherd v. Commonwealth*, 1 S. & R. [Pa.], 1; *Bryant v. Robbins*, 35 N. W. Rep. [Wis.], 545; *Martin, v. Tyler*, 60 N. W. Rep. [N. Dak.], 392; *Walker v. City of Cincinnati*, 21 O. St., 14; *Sheboygan County v. Parker*, 3 Wall. [U. S.], 93; *People v. Bennett*, 54 Barb. [N. Y.], 480.)

References to the question of corporate or county purposes for which a county may issue bonds: *Beals v. Amador*, 35 Cal., 634; *Harcourt v. Good*, 39 Tex., 456; *City of Louisville v. Hyatt*, 2 B. Mon. [Ky.], 178; *Justices of Clarke County v. Paris Turnpike Co.*, 11 B. Mon. [Ky.], 178; *Cheaney v. Hooser*, 9 B. Mon. [Ky.], 329; *City of Lexington v. McQuillan*, 9 Dana [Ky.], 513; *Slack v. Marysville & L. R. Co.*, 13 B. Mon. [Ky.], 1; *Cincinnati, W. & Z. R. Co. v. Clinton County*, 1 O. St., 77; *Goddin v. Crump*, 8 Leigh [Va.], 120; *Sharpless v. Mayor of Philadelphia*, 21 Pa. St., 147; *Walker v. City of Cincinnati*, 21 O. St., 15; *Quincy, M. & P. R. Co. v. Morris*, 84 Ill., 411; *Taylor v. Thompson*, 42 Ill., 9; *Chicago, D. & V. R. Co. v. Smith*, 62 Ill., 268; *Nichol v. City of Nashville*, 9 Humph. [Tenn.], 252; *Cotton v. Leon County*, 6 Fla., 621; *Stockton v. Powell*, 29 Fla., 1.

32

Public corporations: *Trustees of Dartmouth College v. Woodward*, 4 Wheat. [U. S.], 518; *Trustees of Schools v. Tatman*, 13 Ill., 30; *Philips v. Bury*, 2 Term Rep. [Eng.], 346; *Allen v. McKean*, 1 Sumn. [U. S.], 276; *People v. Morris*, 13 Wend. [N. Y.], 325; *Penobscot Broom Corporation v. Lamson*, 16 Me., 224; *State v. Dodge County*, 8 Neb., 124; *State v. Lancaster County*, 4 Neb., 540; *Darst v. Griffin*, 31 Neb., 668.

The power to construct drains is no part of the usual powers belonging to town and county governments, nor is the power to construct canals any part of the usual powers belonging to such governments, but is a special authority given for a particular purpose and may be conferred by legislative power on any person or body. (*Bryant v. Robbins*, 70 Wis., 258; *State v. Riordan*, 24 Wis., 484; *State v. Supervisors*, 25 Wis., 339; *State v. Dousman*, 28 Wis., 541; *McRae v. Hogan*, 39 Wis., 529; *State v. Supervisors*, 62 Wis., 376; *Soens v. City of Racine*, 10 Wis., 271*; *Bond v. Kenosha*, 17 Wis., 292; *Johnson v. City of Milwaukee*, 40 Wis., 315; *Hagar v. Reclamation District*, 111 U. S., 701; *Wurts v. Hoagland*, 114 U. S., 606; *Martin v. Tyler*, 60 N. W. Rep. [N. Dak.], 392; *People v. Salomon*, 51 Ill., 37; *People v. Walsh*, 96 Ill., 232; *Walker v. City of Cincinnati*, 21 O. St., 15.)

The canal act is not unconstitutional on the ground that it makes party affiliation a qualification for office. (*In re Supreme Court Commissioners*, 37 Neb., 655; *State v. Bemis*, 45 Neb., 724.)

The scope of the act was fairly reflected in its title. (*People v. McCallum*, 1 Neb., 194; *White v. City of Lincoln*, 5 Neb., 505; *State v. Ream*, 16 Neb., 683; *In re White*, 33 Neb., 812; *Perry v. Gross*, 25 Neb., 830; *Poffenbarger v. Smith*, 27 Neb., 788;

*Kansas City & O. R. Co. v. Frey*, 30 Neb., 792; *Western Union Telegraph Co. v. Lowrey*, 32 Neb., 737; *Singer Mfg. Co. v. Fleming*, 39 Neb., 679; *Kleckner v. Turk*, 45 Neb., 176; *Van Horn v. State*, 46 Neb., 62; *People v. State Ins. Co.*, 19 Mich., 392; *People v. Nelson*, 133 Ill., 565; *McCaslin v. State*, 44 Ind., 151; *State v. Town of Union*, 33 N. J. Law, 350; *Simpson v. Bailey*, 3 Ore., 516; *David v. Portland Water Co.*, 14 Ore., 98; *People v. Commissioners*, 47 N. Y., 501; *McArthur v. Nelson*, 81 Ky., 67; *In re Application Mayor City of New York*, 99 N. Y., 570.)

The act did not authorize the formation of a private corporation in a manner in effect amendatory of the general corporation law. (1 Dillon, Municipal Corporations, secs. 29, 30; *Ten Eyck v. Delaware & Raritan Canal Co.*, 19 N. J. Law., 5; *Tinsman v. Belvidere D. R. Co.*, 26 N. J. Law, 148; *Miners Bank of Dubuque v. United States*, 1 Greene [Ia.], 553; *Trustees of University v. Winston*, 5 Stewart & P. [Ala.], 17; *People v. Morris*, 13 Wend. [N. Y.], 324; *Dean v. Davis*, 51 Cal., 406; *Hoke v. Perdue*, 62 Cal., 545; *People v. Reclamation District*, 53 Cal., 346; *People v. Williams*, 56 Cal., 647; *People v. La Rue*, 67 Cal., 526; *People v. Salomon*, 51 Ill., 37.)

*Charles Offutt, William S. Poppleton,* and *Charles S. Lobingier, contra:*                •

The constitutionality of the act may be determined in this proceeding. (*State v. Stevenson*, 18 Neb., 416; *State v. Douglas County*, 18 Neb., 506; *State v. Bartley*, 40 Neb., 298; *State v. Cobb*, 44 Neb., 434; *Van Horn v. State*, 46 Neb., 62; *State v. Tappan*, 29 Wis., 664; *State v. Nelson*, 21 Neb., 572; *State v. Wallichs*, 13 Neb., 278.)

The canal trustees are county officers, and the

provision for their appointment contravenes arti-
cle 10, section 4, of the constitution. (*Speed v.
Crawford*, 3 Met. [Ky.], 207; *People v. Hurlburt*, 24
Mich., 98; *State v. Lancaster County*, 6 Neb., 474;
*State v. Brennan*, 29 N. E. Rep. [O.], 593; *Davies v.
Supervisors*, 50 N. W. Rep. [Mich.], 862; *Varney v.
Justice*, 6 S. W. Rep. [Ky.], 457; *Ice v. Marion
County*, 20 S. E. Rep. [W. Va.], 809; *United States
v. Hatch*, 1 Pinney [Wis.], 182; *Bryant v. Robbins*,
35 N. W. Rep. [Wis.], 545; *Martin v. Tyler*, 60 N.
W. Rep. [N. Dak.], 392-401; *People v. Nostrand*, 46
N. Y., 375; *People v. Rathbone*, 40 N. E. Rep. [N.
Y.], 395; *United States v. Hartwell*, 6 Wall. [U. S.],
385; *United States v. Maurice*, 2 Brock. [U. S.], 103;
*Smith v. Lynch*, 29 O. St., 261; *State v. Kennon*, 7 O.
St., 547; *In re Attorneys and Counselors*, 20 Johns.
[N. Y.], 492; *State v. Wilson*, 29 O. St., 347; *Com-
monwealth v. Evans*, 74 Pa. St., 124.)

In imposing upon the district judges the duty
of appointing canal trustees, the act requires the
exercise by such judges of other than judicial
power, and thus contravenes article 2, section 1,
of the constitution. This appears from the pur-
pose of the provision as reflected in its history.
(Thayer, Cases on Constitutional Law; Aristotle,
Politics, book 6, ch. 14; Works of John Adams,
vol. 4, p. 216; Montesquieu, Spirit of Laws.) This
is clear also from the meaning of the phrase
"judicial power" (*State v. Denny*, 118 Ind., 449),
and of the term "jurisdiction." (*United States v.
Arredondo*, 6 Pet. [U. S.], 691-709; *Rhode Island v.
Massachusetts*, 12 Pet. [U. S.], 657; *Sinking Fund
Cases*, 99 U. S., 761; 6 Bracton, Laws of England
[Master of Rolls' ed.], p. 159.)

Appointment to office is the exercise neither of
judicial power nor of jurisdiction. (*Miller v.

*Wheeler,* and *Crawford v. Norris,* 33 Neb., 765; *Supervisors of Election,* 114 Mass., 247; *Houseman v. Montgomery,* 58 Mich., 364; *State v. Hyde,* 121 Ind., 20; *State v. Denny,* 118 Ind., 449; *Ex parte Griffiths,* 118 Ind., 83; *Heinlen v. Sullivan,* 64 Cal., 378; *Burgoyne v. Supervisors,* 5 Cal., 9; *Dickey v. Hurlburt,* 5 Cal., 343; *People v. Nevada,* 6 Cal., 143; *Houston v. Williams,* 13 Cal., 24; *People v. Sanderson,* 30 Cal., 160; *Smith v. Strother,* 68 Cal., 194; *People v. Bennett,* 29 Mich., 451; *Shephard v. City of Wheeling,* 30 W. Va., 479; *Minnesota v. Young,* 29 Minn., 474; *State v. Kennon,* 7 O. St., 561; *State v. Barbour,* 53 Conn., 76; *Taylor v. Commonwealth,* 3 J. J. Marsh. [Ky.], 401; *Hayburn's Case,* 2 Dall. [U. S.], 409; *United States v. Ferreira,* 13 How. [U. S.], 43; *Gordon's Case,* 117 U. S., 697; *In re Sanborn,* 148 U. S., 222; *In re Pacific Railway Commission,* 32 Fed. Rep., 241; *In re McLean,* 37 Fed. Rep., 648.) The Illinois cases relied on by plaintiff in error are unsound and not well considered, and the cases from other jurisdictions are not in point.

The act is special legislation, in affecting the powers of judges of the district courts of certain counties only, and contravenes article 6, section 19, of the constitution. (*State v. Shropshire,* 4 Neb., 411; *People v. Nelson,* 133 Ill., 600; *People v. Rumsey,* 64 Ill., 44.)

Both the title and the body of the act contain more than one subject. (*Trumble. v. Trumble,* 37 Neb., 340; *State v. Lancaster County,* 6 Neb., 474; *Smails v. White,* 4 Neb., 357; *State v. Lancaster County,* 17 Neb., 85; *Van Horn v. State,* 46 Neb., 62; *State v. Bemis,* 45 Neb., 724; *People v. Fleming,* 7 Colo., 230.)

The subject of the act is not clearly expressed in the title. (*Burlington & M. R. R. Co. v. Saunders*

*County*, 9 Neb., 507; *City of Tecumseh v. Phillips*, 5 Neb., 305; *Ives v. Norris*, 13 Neb., 252; *Holmberg v. Hauck*, 16 Neb., 337; *Touzalin v. City of Omaha*, 25 Neb., 817; *Kleckner v. Turk*, 45 Neb., 176.)

The body of the act provides a new mode of creating corporations of which the title gives no hint; contains provisions relating to irrigation and water rights not indicated in the title; provides for condemnation of land, for leasing the same to private individuals for manufacturing purposes, with no hint of this in the title; confers important and far-reaching powers upon the district judges, which nothing in the title suggests, and vitally affects counties of less than 125,000 inhabitants, without purporting to do so in the title. (*Blair v. State*, 17 S. E. Rep. [Ga.], 96; *Snell v. City of Chicago*, 24 N. E. Rep. [Ill.], 532; *Wilcox v. Paddock*, 31 N. W. Rep. [Mich.], 609; *Niles v. Schoolcraft*, 60 N. W. Rep. [Mich.], 771; *Burlington & M. R. R. Co. v. Saunders County*, 9 Neb., 507; *City of Tecumseh v. Phillips*, 5 Neb., 305; *Ives v. Norris*, 13 Neb., 252; *Adams v. San Angelo Water-Works Co.*, 25 S. W. Rep. [Tex.], 605; *Clark v. Board of Commissioners of Wallace County*, 39 Pac. Rep. [Kan.], 225.)

The act is void, because, while amendatory in character, it fails to refer to existing acts with whose provisions it is clearly in conflict. (*Trumble v. Trimble*, 37 Neb., 347; *City of South Omaha v. Taxpayers' League*, 42 Neb., 671; *In re House Roll 284*, 31 Neb., 505; *Lancaster County v. Hoagland*, 8 Neb., 38; *Ryan v. State*, 5 Neb., 276; *White v. City of Lincoln*, 5 Neb., 505; *Hamlin v. Meadville*, 6 Neb., 234; *People v. McCallum*, 1 Neb., 182; *People v. Nelson*, 133 Ill., 574.)

Special and exclusive privileges are granted by the act to certain counties, thus infringing article

3, section 16, of the constitution. (*McCarthy v. Commonwealth*, 5 Atl. Rep. [Pa.], 215; *State v. Justices*, 1 S. W. Rep. [Mo.], 307.)

The act is invalid, because it delegates to the electors of but one county the power to determine when its provisions shall be operative. (*In re Municipal Suffrage*, 36 N. E. Rep. [Mass.], 488; *Barto v. Himrod*, 8 N. Y., 483; *Santo v. State*, 2 Ia., 165; *Ex parte Wall*, 48 Cal., 279; *Bradshaw v. Lankford*, 21 Atl. Rep. [Md.], 66.)

The act is invalid, because it makes party affiliation a test for office. (Constitution, art. 1, sec. 4; *People v. Hurlburt*, 24 Mich., 93; *State v. Seavey*, 22 Neb., 466.)

The act is unconstitutional, because it requires a tax levy for other than public purposes, the conduct by the county of other than public business, and the taking of private property "without due process of law." (Cooley, Taxation [2d ed.], p. 55; *Coats v. Campbell*, 37 Minn., 498; *Sharpless v. Mayor*, 21 Pa. St., 168, 169; *Loan Association v. Topeka*, 20 Wall. [U. S.], 664; *Attorney General v. City of Eau Claire*, 37 Wis., 400; *Nalle v. City of Austin*, 21 S. W. Rep. [Tex.], 375; *People v. Parks*, 58 Cal., 624; *People v. Salem*, 20 Mich., 452; *Hanson v. Vernon*, 27 Ia., 28; *Commonwealth v. Maxwell*, 27 Pa. St., 444; *Mott v. Pennsylvania C. R. Co.*, 30 Pa. St., 9; Sedgwick, Constitutional Law, pp. 174, 175, 515; *Taylor v. Porter*, 4 Hill [N. Y.], 140; *Lowell v. City of Boston*, 111 Mass., 454; *Kingman v. City of Brockton*, 26 N. E. Rep. [Mass.], 998; *Parkersburg v. Brown*, 106 U. S., 487; *Ottawa v. Carey*, 108 U. S., 110; *Cole v. La Grange*, 113 U. S., 1; *Allen v. Jay*, 60 Me., 124; *Mather v. City of Ottawa*, 114 Ill., 659; *State v. Osawkee Township*, 14 Kan., 419; *Curtis v. Whipple*, 24 Wis., 350; *Weismer v. Douglas*, 21 Am. Rep. [N. Y.],

586; *People v. Batchellor,* 53 N. Y., 128; *State v. Adams County,* 15 Neb., 568; *Getchell v. Benton,* 30 Neb., 870; *Philadelphia Association v. Wood,* 39 Pa. St., 73; *Mead v. Acton,* 139 Mass., 341; *People v. Mayor,* 4 N. Y., 419.)

The act is invalid, because it attempts to create a corporation by a special law, and particularly because it authorizes the formation of a private corporation in a manner which, in effect, amends the general corporation law. (*State v. Atchison & N. R. Co.,* 24 Neb., 143; *Abbott v. Omaha Smelting & Refining Co.,* 4 Neb., 416; *Trumble v. Trumble,* 37 Neb., 347; *City of South Omaha v. Taxpayers' League,* 42 Neb., 671; *State v. Cobb,* 44 Neb., 434; *In re House Roll 284,* 31 Neb., 505; *Lancaster County v. Hoagland,* 8 Neb., 38; *Ryan v. State,* 5 Neb., 276.)

*H. H. Baldrige,* also for defendants in error:

The legislature of the state cannot delegate to the judges of the district court the power to appoint trustees to construct a canal as provided by the act. (*Achley's Case,* 4 Abb. Pr. [N. Y.], 35; *Taylor v. Commonwealth,* 3 J. J. Marsh. [Ky.], 401; *Heinlen v. Sullivan,* 64 Cal., 378; *Houseman v. Kent,* 58 Mich., 365; *Gordon v. United States,* 117 U. S., 697; *Walker v. City of Cincinnati,* 21 O. St., 15; *Case of Supervisors of Election,* 114 Mass., 247.)

The powers of the district court are not broad enough to make appointments to office. (*Osborn v. Bank of United States,* 9 Wheat. [U. S.], 738; *Johnson v. Jones,* 2 Neb., 135.)

The act is void. Canal trustees are county officers, and the constitution provides that county officers shall be elected. (*United States v. Maurice,* 2 Brock. [U. S.], 96; *United States v. Hartwell,* 6 Wall. [U. S.], 393; *In re Hathaway,* 71 N. Y., 238;

*Bradford v. Justices,* 33 Ga., 332; *Commonwealth v. Evans,* 74 Pa. St., 139; *People v. Langdon,* 40 Mich., 673; *Rowland v. Mayor,* 83 N. Y., 376; *State v. Stanley,* 66 N. Car., 59; *Hall v. State,* 39 Wis., 79; *Shelby v. Alcorn,* 36 Miss., 273; *State v. Valle,* 41 Mo., 31; *People v. Nostrand,* 46 N. Y., 375.)

*Wharton & Baird* and *Frank T. Ransom,* also for defendants in error.

RYAN, C.

At the last session of the legislature of this state there was passed and approved an act entitled "An act enabling counties in the state of Nebraska having a population of not less than 125,000 inhabitants to issue bonds to construct, own and operate canals in the state of Nebraska for navigation, water power and other purposes, and generating of electric and other power and transmitting of the same for light, heat, power, and other purposes; and to acquire right of way and land for such purposes, and to provide for the appointment of a board of trustees to carry into effect the purposes of this act, and to levy taxes to pay the same and interest thereon, and to repeal section 2032a, Consolidated Statutes, 1893." (Session Laws, 1895, ch. 71.)    Douglas county alone in this state has a population adequate to render available the above provisions. In the body of the act in question it is provided that the bonds which may be issued shall not exceed in amount ten per cent of the assessed valuation of the county, and that, whether or not bonds shall be voted, must first be submitted to the voters of the county in compliance with the prayer of a petition signed by 2,500 legal voters

asking such submission, which petition must be
presented to and acted upon by the county com-
missioners.   A petition in conformity with the
above requirements was presented to the board
of county commissioners of Douglas county.
This board refused to call an election, and by
*mandamus* in the proper district court it was
sought by one of the petitioners to compel the
county board to order an election.   The judgment
of the district court was adverse to relator, and
the correctness of this judgment is now chal-
lenged by this error proceeding.

It is very difficult to summarize the provisions
of the above act within a reasonably brief space,
nevertheless this shall now be attempted.   After
the proposition to issue bonds has been carried
it becomes the duty of the county commissioners
to notify the judges of the district court of the
result of the election, whereupon these judges are
required to appoint five trustees.   Each of the
trustees must give an official bond in such amount
as the board of county commissioners may fix.   It
is provided that the board of trustees shall, "when
duly organized, be construed in law and equity a
body corporate and politic, and shall be known
by the name and style of 'The Board of Canal
Trustees of ——— County, Nebraska,' and by
such name and style may sue and be sued, con-
tract and be contracted with, acquire and hold
real estate and personal property necessary for
its corporate purposes and adopt a common seal
and alter the same at pleasure, and shall exercise
all the powers necessary to carry into effect the
object for which such board shall have been ap-
pointed, and shall control and manage all the
affairs and property which shall come into the

hands or under the control of such board of trustees." (Session Laws, 1895, p. 307, ch. 71, sec. 1.) It further provides: "Such board of trustees shall have full power to pass all necessary rules and regulations for the proper management and conduct of the business of such board, and of such corporate body, and for carrying into effect the objects for which such board is created. Any board of canal trustees organized as provided in this act shall have power to make preliminary surveys, lay out, acquire right of way and other lands within such county or within twenty miles of the limits of such county, necessary for its purposes, establish, construct, and maintain and operate a canal through any county or counties in this state for navigation, water power, and all other purposes, except irrigation, for generating electric and other power and transmitting the same for light, heat, power, and all other purposes except irrigation, and may dispose of the water in such canal for domestic and for all other purposes except irrigation, and to control and dispose of water power, electric, pneumatic, hydraulic, or other power generated by such water power, also to operate a line of boats on such canal, or granting the right for such navigation to any party or parties upon payment of tolls, subject to such rules and regulations as shall be established and adopted by such board of trustees; Provided, That no exclusive right shall be granted to any person or persons or corporations, except that such board may lease to any party, ground for manufacturing or industrial purposes for a term or terms of years, which ground so leased shall be subject to reappraisal for rental purposes every twenty years. All revenues de-

rived by said board of trustees from every source shall be deposited with the county treasurer of such county and by him be placed in a fund to be designated as the canal fund, the general expense, maintenance, extension, or enlargement of such canal or other works connected therewith shall be paid out of said canal fund by the county treasurer of such county upon official orders issued by the board of canal trustees. All surplus moneys in said fund not needed for canal expenses, improvement, or enlargement shall be placed in the general fund of the county and may be used for all purposes for which the county general fund, as now designated, may be used. Such board of trustees for and on behalf of such county may acquire by purchase, condemnation, or otherwise, whether within or without the county limits, if within twenty miles of the limits of such county, any and all real property necessary to carry into effect the objects for which such board shall have been appointed and which may be required for its corporate purposes and right of way for the canal and right of way privileges and easements, sites for reservoirs and dams, power houses, and additional lands to be leased to persons, parties, or corporations purchasing or using such power; Provided, That all the moneys for the purchase of any real property shall be paid before possession is taken thereof, or any work done thereon, and all moneys for the condemnation of any property shall be paid into the county court of the county in which such property shall be condemned. Whenever the board of canal trustees of any county appointed under this act shall require any private property necessary for the purposes aforesaid, such prop-

erty shall be acquired or condemned as nearly as may be in the same manner as is provided by law for the condemnation of right of way for railroad corporations within this state; Provided, That proceedings to acquire possession by condemnation of property so taken shall in all cases be instituted in the county where the property sought to be taken or damaged is situated; Provided, That when it shall be necessary in making any improvement by such board of trustees to enter upon any property held for public use they shall have power to do so, and may acquire right of way upon and over such property held for public use in the same manner as is above provided for acquiring private property by condemnation of such board of trustees, and may enter upon, use, widen, deepen, and improve any stream, waterway, or lake that may be necessary to be used for such canal purposes, but in cases where public roads are crossed by such canal or tail-race or outlets thereof, such board of trustees shall cause to be constructed and maintained, bridges over such canal or tail-race or outlets thereof." (Session Laws, 1895, p. 308, ch. 71, sec. 1.)

It is scarcely necessary, perhaps, to note that in respect to the canal proposed to be constructed and operated the board of county commissioners of Douglas county, after they shall have ordered an election, have but little more to say or do. The duty is devolved upon the board to notify the district judges of the result of the election upon the proposition to issue bonds, whereupon the judges must appoint five trustees. These trustees, when organized so as to constitute a board, take charge of the construction and operation of the canal as property owned by itself

for the use and benefit of the county. There is a provision that the title shall be held for the county, but there is no method by which the county, *co nomine*, can assert ownership or an independent right of possession. All revenues, it is true, must be deposited with the county treasurer, but these must be kept as a distinct fund and from this fund the board of trustees, upon its own orders, may require payments to be made, and only such surplus as the board of trustees does not require may be used by the county. The county commissioners have no voice in allowing or rejecting claims, and there is reserved no right of appeal in favor of either the county or a taxpayer. There is required no accounting by the trustees, either of moneys received or expended, and, without the consent of property owners thereby affected, the jurisdiction of these functionaries of Douglas county is extended over a circumjacent strip twenty miles in width, for certain purposes attached to and treated as a mere outlying province.

Counsel for plaintiff in error, in his reargument of this case, made in compliance with a request to that effect, contends that the provisions with respect to the creation of a body corporate and politic finds judicial sanction in *People v. Kelly*, 76 N. Y., 475, *Walker v. City of Cincinnati*, 21 O. St., 14, *People v. Salomon*, 51 Ill., 37, and in several California irrigation cases. Before attempting an expression of our own views, we shall indicate why these cases fail to establish the propositions in support of which they were cited.

In *People v. Kelly* an amendment of the constitution of the state of New York had prohibited cities

and other municipal corporations from becoming interested in any stocks or bonds of any corporation, and from incurring any indebtedness except for county, city, or village purposes. It became necessary for the construction of the bridge between the cities of New York and Brooklyn that those cities should own the aforesaid bridge, and, for its joint construction and control, a board of sixteen trustees, one-half of whom were to be appointed by the authorities of each city, was provided. This board was in no sense a body corporate or politic.

In *Walker v. City of Cincinnati*, Scott, C. J., in delivering the opinion of the court, said: "The general scope and purpose of the act is to authorize any such city to construct a line of railroad leading therefrom to any other terminus in the state or in any other state, through the agency of a board of trustees consisting of five persons, to be appointed by the superior court of such city, or if there be no superior court, then by the court of common pleas of the county in which such city is situated. The enterprise cannot, however, be undertaken until a majority of the city council shall, by resolution, have declared such line of railway to be essential to the interests of the city, nor until it shall have received the sanction of a majority vote of the electors of the city, at a special election, to be ordered by the city council, after twenty days' public notice. For the accomplishment of this purpose the board of trustees is authorized to borrow a sum not exceeding ten millions of dollars, and to issue bonds therefor in the name of the city, which shall be secured by a mortgage on the line of railway and its net income, and by the pledge of the faith of the city

and a tax to be annually levied by the council, sufficient with such net income to pay the interest and provide a sinking fund for the final redemption of the bonds." Speaking of the trustees above provided for it was said in the opinion above quoted from: "But it is clear that the trustees are a mere agency through which the city is authorized to operate for its own sole benefit. Neither as individuals, nor as a board, have they any beneficial interest in the fund which they are to manage, or in the road which they are to build. They are in fact, as well as in name, but trustees, and the sole beneficiary of the trust is the city of Cincinnati." These trustees, when organized as a board, certainly were not "a body corporate and politic."

In *People v. Salomon* the scope of the decision, in so far as it is applicable to this case, is thus expressed in the fourth paragraph of the syllabus: "Under the act of February 24, 1869, providing for the location and maintenance of a park for the towns of South Chicago, Hyde Park, and Lake, those towns were erected into a park district, and the people of the towns affected by the act having, by a vote, accepted its provisions, the board of park commissioners thereby created, to whom was committed the entire control of the park, became a municipal corporation, in whom it was competent for the legislature to vest the power to assess and collect taxes within the park district so created, for the special corporate purpose of its creation, and such is the effect of that portion of the act which requires the county clerk of the county in which the district is situated, on the estimate of the park commissioners, to place the amount required, within certain limits, in the tax

warrants for the towns embraced in the district."
The nature and functions of a district of the kind
above referred to are found to exist in irrigation
districts, and, as the discussion of districts of this
latter class applies equally to the park district
above referred to, no further space will be devoted
to a consideration of *People v. Salomon, supra.*

Counsel for plaintiff in error cites several Cali-
fornia cases as being analogous in principle to the
one at bar, but apparently have overlooked the
case of *Board of Directors of Alfalfa Irrigation Dis-
trict v. Collins,* 46 Neb., 411, in which this court has
already considered this class of adjudications.
Referring to chapter 69, Laws, 1895, POST, J., in
the case just cited said: "The act provides for the
creation of irrigation districts comprising prop-
erty susceptible of irrigation from the same source
and by means of the same system of works.   It
requires a petition to be filed with the county
board, signed by a majority of the resident free-
holders who are qualified electors and who own a
majority of the whole number of acres of land
belonging to resident electors, particularly defin-
ing the boundaries of the proposed district.   The
county board may, on the final hearing of the
petition, and after notice thereof to all parties
interested, define the boundaries, making such
changes thereof as may be deemed proper, but in-
cluding therein no lands which are not suscep-
tible of irrigation by the same system.   The ques-
tion is then, at a special election, submitted to the
electors of the proposed district, who are also
owners of real estate therein.   Upon the adoption
of the proposition a record thereof is to be filed in
the office of the county clerk of each county in
which any portion of the land included in said
33

district is situated, and immediately thereafter
the county board shall call a special election, at
which there shall be chosen a treasurer, an as-
sessor, and three directors." In respect to the
nature of irrigation districts it was said in this
opinion: "The validity of this species of legislation
was first called in question in *Turlock Irrigation
District v. Williams*, 76 Cal., 360, in which it was
held under constitutional provisions substantially
similar to ours that the districts contemplated by
the statute of that state are *quasi*-public corpora-
tions in the sense that the purpose of their organi-
zation is the general public benefit." Having re-
viewed at some length the trend of judicial deci-
sions in California, Post, J., quoted with approval
the language of Harrison, J., in *Re Madera Irri-
gation District*, 92 Cal., 296, from which quotation
the following is reproduced: "It is contended that
the act is unconstitutional for the reason that it is
a delegation of the legislative power to create a
corporation. If by this is meant that only the
legislature can create such corporation, the an-
swer is that the constitution prohibits such action.
If it is meant that because the corporation is not
'created' until the voters of the district have ac-
cepted the terms of the act, the answer is that
such proceeding is in direct accord with the prin-
ciples of the constitution. Having the power to
create municipal corporations, but being prohib-
ited from creating them by special laws, the only
mode in which such corporations could be created
under a general law would be by some act on the
part of the district or community seeking incorpo-
ration indicative of its determination to accept its
terms. As the constitution has not limited or pre-
scribed the character of such general law, its char-

acter and details are within the discretionary power of the legislature. We know no more appropriate mode of such indication than the affirmative vote of those who are affected by the acceptance of the terms of the act." From the very instructive case of *Board of Directors of Alfalfa Irrigation District v. Collins* there is clearly deducible the conclusions that irrigation districts organized as above indicated are public, rather than municipal corporations; that their officers are public agents, and that, having been created by vote of the people concerned, duly authorized thereto by a constitutional law, an irrigation district may properly perform the appropriate functions with which it is endowed. Neither the California cases nor the other cases cited on behalf of plaintiff in error furnish any analogies which can be of use with respect to the case under consideration. How, then, shall we classify this "body corporate and politic," which, differing in its genesis and functions from any known political organization, nevertheless assumes the performance of duties and the exercise of functions which in no way resemble those by law devolved upon the board of county commissioners?

The defendants in error contend that the individual trustees are public officers, and that, therefore, the very essential part of the act which provides for their appointment necessarily constitutes them county officers, and on this account it should be declared void. In opposition to this contention we are reminded that the individual trustees have no authority as such, and that it is only as a board that they have recognition. In a brief submitted on behalf of the plaintiff in error it is said: "We insist that this act creates a new

and independent municipal corporation. It is not
a city or county corporation, but one wholly dis-
tinct from either, etc.   *   *   *   The act does not
in any way abridge or curtail any of the rights of
the counties heretofore existing, or the right of
any of its officers, or does not amend or conflict
with any of the provisions of the statute hereto-
fore existing regarding counties." In another
brief submitted on behalf of the plaintiff in error
occurs the following language: "There is an im-
portant feature of the canal act which ought to be
considered in this connection. The board of canal
trustees when duly organized are to become, in
law and equity, a corporation. No one of the
trustees fills any office except as a member of the
board. The board itself—the corporation—is the
agency of the state to carry into effect the pur-
poses of the act." From these definitions and
limitations, if accepted as correct, it would neces-
sarily result that by an act of the legislature a
method had been provided whereby a corporation,
consisting of five private citizens, may be created.
It is idle to insist that this board of trustees, when
organized, can be a municipal corporation in any
sense. The following definition of the term "mu-
nicipal corporation" is given by an eminent writer
upon that subject: "We may therefore define a
municipal corporation in its historical and strict
sense to be the incorporation by the authority of
the government of the inhabitants of a particular
place or district, and authorizing them in their
corporate capacity to exercise subordinate speci-
fied powers of legislation and regulation with re-
spect to their local and internal concerns. This
power of local government is the distinctive pur-
pose and the distinguishing feature of a municipal

corporation proper." (1 Dillon, Municipal Corpo-
rations, sec. 20.) "A municipal corporation is a
subordinate branch of the government of state."
(*Mayor of Nashville v. Ray*, 19 Wall. [U. S.], 475.)

In argument no claim has been founded upon
the use of the term "body politic," also used as a
part of the description of the board of trustees
contemplated in the act, and we apprehend that
none properly could be.  We must, therefore, deal
with the board as a corporation having no munici-
pal attributes, and of which no municipal duties
can be required.  It is provided in section 1, arti-
cle 11, of the constitution of Nebraska, under the
head of "Miscellaneous Corporations," as follows:

"Section 1.  No corporation shall be created by
special law, nor its charter extended, changed, or
amended, except those for charitable, educational,
penal, or reformatory- purposes which are to be
and remain under the patronage and control of
the state, but the legislature shall provide by gen-
eral laws for the organization of all corporations
hereafter to be created."

Under this provision of the constitution there
was in existence before this act was passed a gen-
eral law which provided how corporations com-
posed of and managed solely by private citizens
must be created.  Previous to the commencement
of business, corporations within the class indi-
cated were required to adopt and file for record
articles of incorporation, and to publish notice of
the name, the place, and the nature of their busi-
ness, the amount of capital stock, the time of com-
mencement and termination, to what amount they
might become indebted, and by what officers their
affairs should be managed.  It can scarcely be
claimed by the plaintiff in error that "The Board

of Canal Trustees" can be a "corporation designed for either charitable, educational, penal, or reformatory purposes," and yet its creation is provided for by an act which in no way refers to the general incorporation law which is to be found in chapter 16, Compiled Statutes. This method of amending statutes already in existence is unquestionably in violation of the provision in section 11, article 3, of said constitution that "no law shall be amended unless the new act contain the section or sections so amended, and the section or sections so amended shall be repealed." (*Smails v. White*, 4 Neb., 353; *Sovereign v. State*, 7 Neb., 409; *Stricklett v. State*, 31 Neb., 674; *Trumble v. Trumble*, 37 Neb., 340.) For the sake of the argument, if it should be conceded to the contention of the plaintiff, that the board of trustees duly organized becomes a municipal corporation, the above considerations would still have the same force, the difference being merely that the amendatory act invades the field of legislation governing municipal as distinguished from ordinary corporations.

The right of eminent domain, by the provisions of the act, was delegated directly to the board of trustees as such, and the title of the property acquired by its exercise, or in any other way, for the construction and operation of a canal, is to be held by the board of trustees in its corporate capacity. The title of this act is "An act enabling counties  *  *  *  to issue bonds to construct, own, and operate canals,  *  *  *  and to acquire right of way and land for such purposes, and to provide for the appointment of a board of trustees to carry into effect the purposes of this act, and to levy taxes to pay the same and the interest thereon," etc. Of these enumerated pur-

poses, the power to issue bonds and the power to levy taxes for the payment of the principal and interest thereof are contained in the body of the act without question. In a certain sense, perhaps, the provision in the title for the appointment of a board of trustees to carry into effect the provisions of this act finds response in the provisions of the bill which turn over to said board the whole property as it is acquired or constructed. But it is believed that no power of construction is adequate to the task of demonstrating that the powers of a county to own and operate canals, and to acquire and hold land for such purposes, as provided in the above title, are at all met by providing in the bill itself that such powers shall be vested in a specially created distinct corporation, even though municipal, independent of the county as well as of its officers and taxpayers. The title of the bill is therefore misleading as to a part of the act, without which its purpose could not be accomplished, and since this part of the subject is not clearly expressed in the title, as required by section 11, article 3, of the constitution of this state, no part of the act can be sustained. (*Ives v. Norris*, 13 Neb., 252; *State v. Ream*, 16 Neb., 681; *Trumble v. Trumble*, 37 Neb., 340.) The judgment of the district court is

AFFIRMED.

NORVAL, J., HARRISON, J., and RAGAN, C., concur in result.

IRVINE, C., not sitting.

POST, C. J., dissenting.